## NATIONAL LABOR RELATIONS BOARD v. RUSSELL MFG. CO., Inc. et al.

No. 13104.

United States Court of Appeals
Fifth Circuit.

Sept. 13, 1951.

Arnold Ordman, Attorney, A. Norman Somers, Asst. General Counsel, David P. Findling, Associate General Counsel, National Labor Relations Board, all of Washington, D. C., for petitioner.

John Wesley Weekes, Decatur, Ga., Richard H. Cocke, J. Sanford Mullins, Alexander City, Ala., for respondent.

Before HOLMES, BORAH, and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

This case was originally before this court on petition of the National Labor Relations Board seeking enforcement of its order against the respondents, directing both the corporate and individual respondents to cease and desist from certain unfair labor practices. The order further directed the corporate respondents to reinstate and make whole certain former employees; and to reinstate two employees to their former positions, from which they were alleged to have been demoted, and to make them whole for any loss of pay that they might have suffered. On February 9, 1951, we rendered an opinion, 187 F.2d 296, denying enforcement of the Board's order with respect to the individual respondents, but granting enforcement of the order with respect to the corporate respondents. On petition of the corporate respondents, this court, on May 10, 1951, 187 F.2d 336, granted a rehearing with reference to that part of the Board's order which was held to be enforceable. The portion on which en-

forcement was decreed deals primarily with certain alleged unfair labor practices that occurred during the campaign waged by the union, four alleged discharges, one refusal to employ, and two alleged demotions.

After carefully reconsidering the portion of the Board's order that we held to be enforceable, we are now of the opinion that there is substantial support in the record for only so much of the order as directs the corporate respondents to cease and desist from the unfair labor practices which occurred during the campaign waged by the union. Much of the evidence upon which the Board relied, in holding that the corporate respondents interfered with and restrained their employees in their self-organizational and collective bargaining rights by announcing a wage increase at the height of the union's campaign, and by dominating, interfering with, and contributing support to, a labor organization known as the Recreation Committee, was disputed. Where there is such evidence from which conflicting inferences may be drawn, we recognize the function of the Board and its expertness in such a specialized field. When there is substantial support in the record taken as a whole, the facts, as they have been found by the Board, may not be disturbed by this court; therefore, with regard to the unfair labor practices involved in this case, the substantiality of the Board's findings is amply and conclusively demonstrated.

On the other points, we cannot conscientiously find that the evidence supporting that part of the Board's order dealing with those employees who were alleged to have been discriminatorily discharged is substantial, when viewed in the light that the record in its entirety furnishes, including the bulk of evidence opposed to the Board's view. See Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456; N. L. R. B. v. Pittsburg Steamship Co., 340 U.S. 498, 71 S.Ct. 453. An employee may resign, be discharged, be demoted, or refused reinstatement, for any cause or no cause at all, so long as it is not for union activities. The Board has not shown that the discharges in this case were for such union activities. Its findings and conclusions thereon are based on suspicion, not on substantial facts and legal evidence.

H. C. Dean testified that he quit his job. The Board based its conclusion concerning Dean on the fact that Alphonso Alford, one of the individual respondents, approached Dean's brother and asked that Dean cease his union activity or lose his job. In our former opinion we held that Alford was not an agent or employee, and for that reason the corporate respondents were not accountable for his acts. O. K. Hill applied for employment at a neighboring foundry two months after he left the corporate respondents' employment. The Board found that he was on a so-called black list at the foundry, but no connection was found to have existed between the corporate respondents and the foundry. Even if the black list existed, the corporate respondents could not be held responsible for it. The Board found that Mrs. Hazel Melton voluntarily quit her job, but was discriminatorily refused re-employment because of her union activities. When Mrs. Melton applied for re-employment, there were no vacancies. The employer swore that she was not re-employed because no vacancy existed, and not because of her union activities. There was no impeachment or substantial contradiction of the employer's testimony.

C. M. Tinsley was transferred from slasher tender to warp hauler. The Board found no discrimination in the transfer. When asked to try an experiment of pulling two warps at a time, which other employees had tried, Tinsley said he would rather quit than try the experiment. When he did quit, the Board held it to be a forced resignation because of union activities. Chairman Herzog, dissenting from the Board's holding, was of the opinion that the Board had not carried the burden of proving a discrimination. Upon a review of all the facts, we are of the opinion that the Board's holding was based merely upon suspicion and not upon substantial evidence. Virgil Moody swore that he voluntarily resigned, his resignation to be effective on May 3, 1946. On the effective date of his resignation, he told his foreman he would rescind

his resignation and work for two more weeks. He was told that someone had already been employed to take his place. The Board found a forced resignation. This is not supported by the evidence, because Moody testified that he told the personnel director when he quit his job that he felt like he had returned to work too soon after his service with the Navy.

Henry Cole Pasley was found to have been demoted from a weaver to a warp man. He admitted that he requested the transfer; that he made more money as a warp man; and that he wanted to be a warp man. The Board held the transfer to be a demotion caused by union activity. As the basis for its holding, the Board relied on an incident where Alford, a private citizen, told Pasley that President Russell wanted to see him, and, because of Alford's antagonism to the union, Pasley was singled out for discriminatory action. We have already held that Alford was not an employee or agent of the corporate respondents, and that his conduct could not be attributed to them. Clearly, his acts may not be the foundation of the Board's conclusion of discrimination. Othiel Kirk was transferred from loom fixer to loom changer. The reason given for this transfer was Kirk's marked inefficiency as a loom fixer. Because he had been active in the union, and because a fellow employee had questioned him regarding the progress of the union campaign, the Board held the transfer to be a demotion in violation of the Act. We are unable to find substantial support for such a holding by the Board.

The Board made no finding of any overt acts on the part of the employers or their officials on which it could base its conclusion of discrimination. Its conclusions amount to no more than that these employees were constructively discharged in violation of the Act, with such conclusions being based merely on hearsay, inference, and suspicion. It is apparent that the Board refused to accept the positive, unimpeached, and uncontradicted, testimony of the employer as to the real reason for the demotions or resignations involved. Such sworn testimony cannot be arbitrarily disregarded on the assumption that he was lying. Such uncontradicted testimony makes it impossible for us to say that there is substantial support for the Board's findings in regard to the discriminatory discharges and demotions.

That part of our former opinion which upheld the Board's order directing the corporate respondents to cease and desist from certain unfair labor practices is affirmed, but that part of the decree heretofore entered which ordered enforcement of the Board's order as to reinstatement of certain employees with back pay is hereby set aside, and it is now ordered that enforcement of this portion of the Board's order be denied.

Affirmed in part and reversed in part.