## NATIONAL LABOR RELATIONS BOARD v. RAY SMITH TRANSPORT CO.

### No. 13612.

United States Court of Appeals
Fifth Circuit.
Dec. 20, 1951.

Elmer Davis, Ch. Law Officer, NLRB, Fort Worth, Tex., David P. Findling, Assoc. Gen. Cnsl. NLRB, A. Norman Somers, Asst. Gen. Cnsl. NLRB, Washington, D. C., for petitioner.

George E. Seay, W. D. White, Dallas, Tex., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

8. Sorenson v. City National Bank, 121 Tex. 478, 479, 49 S.W.2d 718; Maury v. McDonald, 55 Tex.Civ.App. 50, 118 S.W. 2d 812.

HUTCHESON, Chief Judge.

Exonerating the trial examiner of specific charges of unfairness and bias, and adopting substantially whole his findings, conclusions and recommendations, the Board found[1] Respondent: (1) subject to the Act, 29 U.S.C.A. § 151 et seq.; (2) in violation of Sec. 8(a) (1), in respect to statements made to and questions asked of its employees; and (3) in violation of Secs. 8(a) (1) and (3), in respect of the discharge of six employees.

Based on these findings, it entered its order requiring respondent to cease and desist,[2] and to take affirmative action.[3]

·Respondent not having complied therewith, the Board is here by petition to enforce its order. Respondent, on its part, vigorously, indeed vehemently, assails the proceeding before the Board as (1) without jurisdiction; (2) arbitrary, biased and unfair; and (3) as based on findings, conclusions, and recommendations of the examiner which are not only erroneous but so fantastic, so bizarre, so contrary to ordinary right reason as that the wish appears father to the thought, the finding the product of the examiner's blind faith in the goodness of the Board's cause.

Insisting, as it did before the Board, that in this case, as in Phelps case, N. L. R. B. v. Phelps, 5 Cir., 136 F.2d 562, 563, the partiality and bias of the examiner has vitiated the hearing, it urges upon us that a judgment based on his findings and conclusions may not stand, the order of the Board must be vacated, and the matter remanded to it so that Respondent may be accorded the fair and impartial trial guaranteed to it by law.

Further, invoking N. L. R. B. v. Pittsburgh S. S. Co., 340 U. S. 498, 71 S.Ct. 453, 95 L.Ed. 479 and N. L. R. B. v. Russell, 5 Cir., 191 F.2d 358, it insists that if this is not to be done, enforcement of the order should be denied, because, viewed upon the record as a whole, the findings are without legal support.

■ We find ourselves in disagreement with Respondent's position of no jurisdiction in Board and Court. In N. L. R. B. v. Gulf Public Service Co., 5 Cir., 116 F.2d 852, 854, the controversy, arising over the efforts of the Board to extend the actual, to the limits of the theoretical, jurisdiction, then being in its early stage, we pointed out the absence from the act of any "standard of degree by the use of which it can be said, as a matter of power rather than of wise policy, that a particular amount of probable direct interference with interstate commerce is too little to come within its cognizance".

In other cases, and particularly in N. L. R. B. v. Mid-Co Gasoline Co., 5 Cir., 183 F.2d 451, we have reaffirmed this view. Upon the authority of those cases and the many others they cite, we reject Respondent's first position.

Of its second position, that the record discloses a hearing conducted with such partiality and unfairness as to amount to a denial of due process, we agree with Respondent that it does present "the usual picture of supporting findings arrived at by a process of quite uniformly 'crediting' testimony favorable to the charges and as uniformly 'discrediting' testimony opposed." N. L. R. B. v. Caroline Mills, 5 Cir., 167 F.2d 212, 213.

■ We cannot say of it, though, that it presents anything more than so many of these hearings have presented, a picture of administration, at its most, unjudicial, worst, administration which, keeping the promise of a fair hearing to the ear, breaks it to the hope. In N. L. R. B. v. Robbins, Tire & Rubber Co., 5 Cir., 161 F.2d 798, quoted with approval in National Labor Relations Board v. Pittsburgh, 337 U.S. 656, 659, 69 S.Ct. 1283, 93 L.Ed. 1602, we have declared that this alone would not be sufficient to characterize a hearing as legally unfair. We adhere to that ruling.

Here the record shows no overt acts, no evidence of advocacy external to the report,

---

1. 89 N.L.R.B. 1045.

2. (a) from discouraging membership in Local Union No. 745, A.F. of L., and (b) interrogating its employees concerning the Union.

3. To offer reinstatement to, and make whole, the six named employees.

so that what we said and did in Phelps' case supra, is without application, and we will not, as we did there, vacate the order and remand the whole matter to the Board for another trial.

When it comes, however, to Respondent's third point, that the findings of the examiner are without reasonable support in the evidence, the matter of the examiner's attitude stands differently. In connection with our determination of whether, as claimed by the Board, the findings are fairly supported by legal evidence, or, as claimed by the Respondent, are without sound legal foundation, we must, to the extent that the record supports them, give due weight to the claims of the respondent. These are: that the findings were not the result of correct reasoning applied to legal evidence, but of the wish being father to the thought; that they were influenced by, indeed were the result of, the examiner's assuming the role of advocate, rather than of judge; that in support of the charges, inference is based on inference, presumption piled on presumption; [4] and that, beginning with inadmissible hearsay, and proceeding on suspicion and conjecture, [5] they represent a made or synthetic case.

In announcing our determination, it will serve no useful purpose to unduly prolong this opinion by discussing in detail the evidence relied on by the examiner as to each of the unfair labor practices found. It is sufficient to say that a survey of the record and of the appendices of Respondent and Board inescapably shows that the findings and order are without factual or legal basis, and that one of the main reasons that this is so is that the examiner completely forgot: that, in the hearing conducted by him, the Board was cast in the role of accuser, the examiner in that of judge; that the burden was upon the Board to prove its charges by competent and credible evidence, and not upon the Respondent to disprove them; and that the examiner was obligated by virtue of his office to hear all the witnesses, and to make his determination, fairly and impartially, without predilection for any, or predetermination as to the result.

Turning to the evidence in respect of the discharges, because they are the gravamen of the Board's case,—indeed they are the pivot on which it turns, it is at once evident that, to the mind of the examiner, the burden was not on the Board to prove that they were for union activity, but on the Respondent to prove that they were for cause, and also that, to his eager credulity, straws in the wind, offered in support of the Board's case, became hoops of steel, and trifles light as air were confirmations strong as proofs from Holy Writ.

It was this attitude, so evident in the long and argumentative report of the examiner, couched in the language not of adjudication, but of advocacy, and this attitude alone, which enabled the examiner, upon the foundation of a conversation, [6] testified to alone by Bain, a dischargee, to rear the whole superstructure of the findings that Bain and all of the other dischargees were discharged for union activity.

It was this attitude, [7] and this alone, which enabled the examiner to disregard and discredit the positive testimony, not only of every employee of the Respondent, but of disinterested witnesses, customers of the Respondent, who testified positively to the discourtesies to them for which Bain and Veazey were discharged.

It was this attitude which enabled him to find, too, that the discharges were made for union activity; in the face of the positive

---

4. 17 Tex.Jur., 247, 907, 909; Lumbermen's Cas. Co. v. Vaughan, Tex.Civ.App., 174 S.W.2d 1001; Federal Underwriters v. Hightower, Tex.Civ.App., 161 S.W.2d 338.

5. Magnolia Petroleum Co. v. N. L. R. B., 5 Cir., 112 F.2d at 545, 548.

6. This conversation was to the effect: that he had told one Hillin, a lease driver, in reply to his inquiry, that a group of Respondent's truck drivers was trying to organize Respondent's company; that Hillin asked who among the employees were in such group; and that Bain named the group as follows: himself, Veazey, Needham, Worley, Alexander and Straight.

7. Magnolia Petroleum Co. v. N. L. R. B., 5 Cir., 112 F.2d 545.

testimony of Respondent and its officers, that they did not know that the men discharged were members of the union, that they did not even know that any effort was being made to unionize their men; in the complete absence of testimony of any witness that he had conveyed such information to the responsible officers of the company; and in the face of the undisputed testimony, that there were other members of the union than the men discharged, and that Pickard, one of the dischargees, was not one of those Bain claimed to have named.

It was this attitude which enabled him to accept as established, without any testimony to support it, and in the face of the positive testimony to the contrary, the theory of the union and the Board, that Bain's testimony, as to his conversation with Hillin, and Hillin's subsequent going on the deer hunt with Atwell and other officers of the company, was sufficient evidence: that Hillin had repeated this conversation to Atwell, one of Respondent's officers; that Atwell had repeated it to Copeland, with directions to discharge these men because of their activities; and that Copeland, on these instructions, had discharged them.

He found this: in the face of direct and positive evidence, that Respondent had discharged the man for what the Board itself characterizes as "good cause from Respondent's standpoint" for the discharges; in the face of the fact that Hillin did not testify and no one else did, that Bain's purported conversation had been communicated to Atwell; and, in the face of the fact that every person in authority in the company, including Atwell and Copeland, swore that no such communication had been made to them, that they had no knowledge of union activities on the part of Bain or the other dischargees, and that all of the discharges were for cause.

The examiner, as advocate, shrewdly conscious of the gap in the testimony arising out of the fact that Hillin did not testify in support of Bain's testimony and that the examiner's conclusions rested entirely thereon, after calling attention to the admitted fact that Hillin went on the deer hunt, proceeds in a note to say: "Hillin, an 'Older Head', who rated an invitation to the Kerrville deer hunt as a guest of Respondent's officials, was not called by Respondent to refute the inference that it was he who had relayed Bain's information as to who had become active in or joined the Union."

This said, he argues from it that, since Respondent did not offer Hillin to dispute Bain's testimony and to deny that he communicated to respondent what Bain had told him, this should be taken against the respondent as evidence that if Hillin had testified he would have supported not only Bain's conversation with Hillin but the Board's theory that that conversation was communicated by him to Atwell, and by Atwell to Copeland, and that, as a result thereof, the discharges occurred.

■ We know of no principal on which such a ruling could rest, except the principle of suspicion and conjecture [8] and the willingness to believe the worst of one against whom a charge has been made. Hillin was not an officer of Respondent. Indeed, he was not even an employee. He was an independent operator working under lease. The Board, while conceding that there was no testimony in corroboration of Bain that he had talked to Hillin, none that what he had said to Hillin had been communicated to Respondent, took the view that, because, after the conversation which Bain claimed to have had with Hillin, Hillin went on a deer hunt where he spent a period of time with Atwell, and within the next three days, these six were discharged, that this furnished the proof for the finding that Hillin communicated to Atwell the information which he received from Bain, and that Atwell and Smith, on the basis of such information, instructed Copeland to discharge these employees.

In a note, the Board stated: "It is true, as the Respondent asserts, that there is no evidence to establish that Hillin is a supervisor; nor is there testimony that Hillin communicated such information to any of the Respondent's supervisory personnel. In addition, Smith, Atwell, and Copeland,

8. Cf. Magnolia Pet. Co. v. N. L. R. B., 5 Cir., 112 F.2d at 548.

all denied that any such information, or instructions to discharge these employees, was communicated to Copeland between the time of Hillin's return to Dallas on November 19, 1948, and the time these employees were discharged. On this record, however, such direct evidence is not essential."

This, of course, assumes that no witness of the Respondent is entitled to belief when it is the settled law that where a witness's testimony is not contradicted, a trier has no right to refuse to accept it.

In Arnall Mills v. Smallwood, 5 Cir., 68 F.2d 57, at page 59, the court, citing many authorities, declares: " * * * Their evidence cannot be disregarded just because they are employees of the mill. Chesapeake & Ohio v. Martin, 283 U.S., 209, 214, 51 S.Ct. 453, 75 L.Ed. 983; Georgia R. & Banking Co. v. Wall, 80 Ga. 202, 7 S.E. 639; Western & Atlantic R. Co. v. Beason, 112 Ga. 553, 37 S.E. 863. Employment or other relationship of a witness may be considered on the point of his credibility in weighing his against opposing evidence, but is not by itself a sufficient reason for disregarding his testimony. Although the circumstances may support the inference of a fact, if it is shown by direct unimpeached, uncontradicted, and reasonable testimony which is consistent with the circumstances that the fact does not exist, no lawful finding can be made of its existence. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819; Winn v. Consolidated Coach Corp., 6 Cir., 65 F.2d 256; Frazier v. Georgia Railroad & Banking Co., 108 Ga. 807, 33 S.E. 996; Penn Mutual Life Ins. Co. v. Blount, 39 Ga.App. 429, 147 S.E. 768; Neill v. Hill, 32 Ga.App. 381, 382, 123 S.E. 30." Also in point is N. L. R. B. v. Russell, 5 Cir., 191 F.2d 358.

In thus holding, as they did, the examiner and board went contrary to the rules of proof and, rejecting the uncontradicted evidence of witnesses, piling inference on inference, presumption on presumption, and accepting Bain's testimony as gospel, they presumed that what Bain had told him, Hillin had told Atwell. On this presumption they based a second one, that Atwell had communicated this to Copeland, and, on this presumption, they based still another one, that the discharges were based on this communication.

These findings were contrary both to the facts and to the law.[9] They were contrary to the facts because the undisputed testimony not only of Respondent's employees but of outsiders, customers whose business they sought to get and hold, showed that Bain, the star witness for union and board, was wholly unworthy of belief, that he had been discourteous and exceedingly rude, and the matter had been reported to the company and was the real reason for the discharge, and that the same was true of Veazey, while, as to the others, in every case, the proof overwhelmingly showed a real ground or reason for discharge.

The findings were contrary to the law, because, as we pointed out in N. L. R. B. v. Fulton, 5 Cir., 175 F.2d 675, 29 U.S.C.A. § 160(c) prohibits the Board from requiring the reinstatement of any individual "if such individual was suspended or discharged for cause", and, because as we pointed out in the same case "this court, before the amendment of the National Labor Relations Act, held[10] without varying that membership in a union is not a guarantee against discharge and that when real grounds for discharge exist, the management may be not prevented because of union membership from discharging.

The amendment to the act was intended to, and did, give legislative approval to these views and corresponding disapproval to the practices of examiners and board to the contrary." [175 F.2d at page 677.]

Neither are the findings that statements attributed to officers and employees of the company were made in violation of Sec. 8(a) (1) of the act any better grounded in fact or in law. They are not grounded in

9. Cf. Arnall v. Smallwood, supra, and authorities cited in note 4, supra; also Howell Turpentine v. Comm., 5 Cir., 162 F.2d 319 at 325; and Foran v. Comm., 5 Cir., 165 F.2d at 707.

10. See cases cited note 6, 175 F.2d at p. 677.

fact because they are not supported by the credible evidence in the record viewed as a whole. They are not grounded in law because the expression of the views, attributed to and shown by the credible evidence, upon the record as a whole, to have been made by respondent, do not, under the express provisions of the Labor Management Act, 29 U.S.C.A. § 158(c) "constitute or [are they] evidence of an unfair labor practice". The findings and order of the board are without support in the evidence. An appropriate decree denying enforcement may be presented for entry.