COLLINS BAKING CO. v. NATIONAL LABOR RELATIONS BOARD.

No. 13376.

United States Court of Appeals
Fifth Circuit.

Dec. 20, 1951.

484

Fred S. Ball, Jr., Montgomery, Ala., for petitioner.

Andrew P. Carter, New Orleans, La., David P. Findling, Assoc. Gen. Cnsl.

NLRB, A. Norman Somers, Asst. Gen. Cnsl. NLRB, Washington, D. C., for respondent.

Before HOLMES, STRUM, and RIVES, Circuit Judges.

STRUM, Circuit Judge.

This is a petition by Collins Baking Company to review and set aside an order of the National Labor Relations Board, issued July 10, 1950, pursuant to Sec. 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 160(c), directing petitioner to cease and desist from "threatening its employees that it would not re-hire them if they went on strike," or otherwise coercing them in the exercise of their right of self-organization under Sec. 7 of the Act, 29 U.S.C.A. § 157, and to post notices to that effect at its plant. The Board cross-petitions for enforcement.

Petitioner challenges the Board's jurisdiction because petitioner's products are sold wholly within the State of Alabama, where they are manufactured. But petitioner annually imports from other states, and uses in producing its manufactured products, raw materials valued at approximately $250,000, the flow of which in commerce would be directly affected by work stoppages. Imports as well as exports constitute interstate commerce within the meaning of the National Labor Relations Act, 29 U.S.C.A. § 152(6) (7). If the flow of commerce is obstructed by labor disputes, it makes no difference in principle whether the interference is with the inward or outward movement of goods. Commerce is affected in either case. Newport News Shipbuilding Co. v. N. L. R. B., 4 Cir., 101 F.2d 841, 843, affirmed on this point, 308 U.S. 241, 60 S.Ct. 203, 84 L.Ed. 219. It follows that petitioner's business is subject to the Act, and the Board has jurisdiction of the matter in controversy. N. L. R. B. v. McGough Bakeries, 5 Cir., 153 F.2d 420; N. L. R. B. v. Richter's Bakery, 5 Cir., 140 F.2d 870; N. L. R. B. v. Ray Smith Transport Co., 5 Cir., 193 F.2d 142. Compare N. L. R. B. v. Denver etc., 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284.

Moreover, petitioner is an integral part of Campbell-Taggert Bakery Service Corporation, which owns or controls 49 baking companies located in numerous states. It also owns the controlling interest in petitioner's common stock. Petitioner markets its bakery products under the nationally advertised and copyrighted trade name of "Colonial," which trade name is owned by Campbell-Taggert. Through its control of petitioner's Board of Directors, Campbell-Taggert in effect controls the business operations and labor practices of petitioner. This close integration of ownership and operation with a bakery chain operating in several states effectively removes petitioner from the realm of purely local enterprise. Compare Local 74 v. N. L. R. B., 341 U.S. 707, 712, 71 S.Ct. 966, 95 L.Ed. 1309, 1315; Polish Nat'l Alliance v. N. L. R. B., 322 U.S. 643, 649, 64 S.Ct. 1196, 88 L.Ed. 1508, 1515.

On the merits, the controlling question is whether a speech made by petitioner's president on three occasions was merely persuasive argument, now expressly sanctioned by Sec. 8(c) of the Act, 29 U.S.C.A. § 158(c), or whether, in violation of Sec. 8(a) (1), it amounted to interference, restraint or coercion of the employees in the exercise of their right of self organization, secured to them by Sec. 7 of the Act, 29 U.S.C.A. § 157. N. L. R. B. v. Electric City Dyeing Co., 3 Cir., 178 F.2d 980.

The facts are that in October, 1946, a union began to organize petitioner's production and maintenance employees. In a consent election held on October 29, 1946, a majority of the employees designated the union as their bargaining representative. The union and petitioner entered into contract negotiations, but up to December 11, 1946, the parties had not reached an agreement. Meanwhile, the employees became dissatisfied by the delay, and began to talk amongst themselves about striking. Upon learning of the threatened strike, petitioner's president, Louis Collins, held two meetings with different shifts of his employees on November 6, 1946. Substantially all of the employees attended one or the other of the meetings. At each meeting Collins told the employees in sub-

stance he was alarmed by the talk of an impending strike; that there was no occasion for the employees to strike; and that, while he was willing to negotiate with the union, he would not sign a closed-shop contract, as he believed it was unlawful. He further said: "We would hate to see you quit, and if through some effort on the part of a group of people you go out on what might be called a strike, we would not consider it as a strike, because there is nothing that you would be striking against. We have no contract. You would be quitting your job, and if you do we won't take you back. We will try to replace you as rapidly as possible." At a third meeting of the employees on November 26, 1946, the same statements were repeated. These statements are the basis of the Board's order to petitioner to cease and desist from threatening its employees that it would not re-hire them if they went out on strike. The threatened strike did not materialize.

■ Section 7 of the Act, 29 U.S.C.A. § 157, guarantees employees the right to engage in self organization, collective bargaining, and other concerted activities for mutual aid or protection. This includes strikes in support of economic demands as well as strikes in protest against unfair labor practices. N. L. R. B. v. Mackay Radio & T. Co., 304 U.S. 333, 344, 58 S. Ct. 904, 82 L.Ed. 1381, 1389. If employees strike in connection with a current labor dispute, their action is not to be construed as *ipso facto* a termination of their status as employees. They remain employees for the remedial purposes specified in the Act. N. L. R. B. v. Mackay, supra. They simply refuse to work during continuance of the strike. J. A. Bentley Lumber Co. v. N. L. R. B., 5 Cir., 180 F.2d 641; N. L. R. B. v. Gulf Public Service Co., 5 Cir., 116 F. 2d 852, 855; N. L. R. B. v. Remington Rand Co., 2 Cir., 130 F.2d 919.

■ An employer, guilty of no unfair labor practice, has the right to continue his business, and protect it against a purely economic strike, by filling places left vacant by strikers. The Act, however, forbids the employer to terminate the employment of striking employees, or to dis-

criminate against them in hiring replacements, merely because the employees went out on strike. Such action is prohibited by Sec. 8 of the Act. N. L. R. B. v. Mackay, 304 U.S. 333, at 346, 58 S.Ct. 904, 82 L.Ed. 1381, at 1390.

Here, the strike had not yet occurred. It was merely under consideration. The clear import of Collins' statements to the employees was that if they went out on strike, petitioner would discharge them, and for that reason alone would deny them reinstatement. He was not, as in Kansas Milling Co. v. N. L. R. B., 10 Cir., 185 F. 2d 413, warning employees already out on strike that unless they returned to work the company would have no alternative but to fill their jobs and deny them reinstatement after a named date. Collins' statement was more sinister in its implication. It warned the employees that if they consummated a then contemplated strike, petitioner would terminate their employment and would refuse to re-hire them, solely on that account, and without reference to whether or not jobs were available. Coming from the chief executive of the company, the statements would unquestionably have a coercive, not merely a persuasive, effect on the employees, and would tend to restrain them from taking the strike action then under contemplation. Indeed, the circumstances indicate that such was their purpose. Compare Gullett Gin Co. v. N. L. R. B., 5 Cir., 179 F.2d 499, at 502, reversed on another point, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337.

■ Threats of discrimination are no less violative of the rights of employees secured by Sec. 7 than are acts of discrimination. D. H. Holmes Co. v. N. L. R. B., 5 Cir., 179 F.2d 876; N. L. R. B. v. Texas Mining & S. Co., 5 Cir., 117 F.2d 86, at 89; N. L. R. B. v. Continental Pipe Line Co., 5 Cir., 161 F.2d 302, at 305; N. L. R. B. v. Mt. Clemens Pottery Co., 6 Cir., 147 F.2d 262, at 264. The Board's finding that the statements of petitioner's president were threatening and coercive, and constituted a violation of Sec. 8(a) (1) of the Act, is supported by substantial evidence.

The statement held unobjectionable by this Court in N. L. R. B. v. Sidran, 5 Cir., 181 F.2d 671, was milder and free from intimidating threats, and was made in less critical circumstances, than the statement here involved. Also, in Kansas Milling Co. v. N. L. R. B., 10 Cir., 185 F.2d 413, relied upon by petitioners, the statements were not only milder than those here involved, but the employees were actually out on strike. The statements there involved were made in an effort to bring them back to work,—not, as here, to forestall a strike then under consideration.

The petition to set aside the Board's order is denied. The Board's petition to enforce its order is granted.

Enforced.