PENNSYLVANIA THRESHERMAN &
FARMERS' MUT. CAS. INS. CO. v.
CRAPET.

No. 13929.

United States Court of Appeals
Fifth Circuit.

Nov. 15, 1952.

Geo. W. Yancey, Birmingham, Ala., for appellant.

E. David Haigler and Francis H. Hare, Birmingham, Ala., for appellee.

Before BORAH, STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This action was brought to subject the proceeds of a policy of Automobile Liability Insurance to the satisfaction of a judgment obtained in the State court. The complaint was in two counts purporting to plead two separate theories or causes of action: the first being in equity under the authority of Title 28, Sec. 12, Code of Alabama of 1940;[1] and the second being at law and asserting that the plaintiff was a third party beneficiary under the contract of insurance.

The plaintiff had recovered a judgment for $10,000.00 in the State court against Benjamin Guzzetta, driver of the automobile which struck and killed plaintiff's intestate. In this case the plaintiff claimed and contended that Guzzetta was an insured under the policy of Automobile Liability Insurance[2] and sought to subject the proceeds of that policy to the satisfaction of the judgment obtained in the State court.

The named insured in the policy was one Hollis Beard. The basic questions comprehended within the issue were submitted by the District Judge to the jury in the form of two interrogatories, which with the jury's answers were as follows:

"Interrogatory No. 1:

"Before the accident on September 27, 1947, had Hollis Beard made a 'gift' of the Pontiac convertible to Betty Gene Beard, now Betty Gene Mitchell?—No. Odie D. Jones, Foreman."

"Interrogatory No. 2:

"Was Benjamin Guzzetta driving the Pontiac convertible on September 27, 1947, with the 'consent' of Hollis Beard? Yes. Odie D. Jones, Foreman."

Many of the facts were beyond dispute. Hollis Beard of High Point, North Carolina, had purchased the car on March 7, 1947, and on the next day the insurance policy was issued in his name. Within a week, on the 14th day of March, he drove the car to Birmingham, Alabama, delivered it to his then—but estranged—wife, Betty Gene Beard, and the next day returned to North Carolina taking with him another car which his wife had driven to Birming-

[1] "12. (8377) Remedy of injured party after recovering judgment.—Upon the recovery of a final judgment against any person, firm, or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death, if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurance company and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

[2] That claim was based upon either of two grounds. The first was the so-called omnibus clause of the policy defining "insured" as follows:

"The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured."

The second was the provision of Section 20-209 of Volume I of the General Statutes of North Carolina 1943 in force at the time of the issuance of the policy to Beard in North Carolina to the effect that an automobile liability policy "shall insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the consent, express or implied, of such insured" as construed and applied by the Fourth Circuit in Harrison v. Carroll, 139. F.2d 427.

ham. The certificate of title of the motor vehicle required by the laws of North Carolina was issued to Hollis Beard on March 28, 1947, and was not officially changed to the name of Betty Gene Beard until November 4, 1947, sometime after the fatal accident. Alabama, however, is not a "title" state and a gift transferring title to an automobile may there be made by delivery and passing of custody, control, management and use from the donor to the donee, Feore v. Trammel, 213 Ala. 293, 104 So. 808; De Mouy v. Jepson, 255 Ala. 337, 51 So.2d 506, 508. The Beards were divorced on April 13, 1947. Mrs. Beard retained possession of the automobile. Mr. Beard married another woman on September 20, 1947. The date of the fatal accident was September 27, 1947. On that day Mrs. Beard had loaned the automobile to a friend by the name of Benjamin Guzzetta to use for his personal pleasure; and Guzzetta, while so using said automobile, had struck and killed plaintiff's intestate. The insurance policy had remained in the name of Hollis Beard. Mrs. Beard had continued to use the North Carolina license tag on the car and had not applied for and obtained an Alabama license. Hollis Beard had not given her a written transfer or bill of sale to the car.

Concededly, Mrs. Beard's use of the car was not accompanied by any restriction, express or implied, to prevent her from permitting its use by Guzzetta or any one else. The district court proceeded on the theory, correctly we think, that if Hollis Beard retained the title to and right of control of the automobile, then either under the North Carolina Statute, see Harrison v. Carroll, 4 Cir., 139 F.2d 427, or under the terms of the policy, see Georgia Casualty Co. v. Waldman, 5 Cir., 53 F.2d 24, when he permitted its unrestricted use by Mrs. Beard, and she in turn loaned it to Guzzetta, Guzzetta would be using the car with the implied consent or permission of Hollis Beard. The disputed issue of fact, therefore, was whether Hollis Beard had divested himself of all right of control by making a gift of the insured automobile to Betty Gene Beard on March 14, 1947. On that issue four witnesses, Hollis Beard, Betty Gene Beard, and Mr. and Mrs. H. L. Waldrom, testified positively in the affirmative. The plaintiff introduced no witness, but relied upon circumstances and inconsistencies developed upon the examination and cross-examination of the four witnesses for the defendant, which may be briefly summarized as follows:

1. That though Hollis Beard delivered the automobile to his wife within a week after its purchase, he took the title in his own name and had the insurance policy issued in his name and it so remained.

2. That he accepted the North Carolina certificate of title made out in his name two weeks after he had delivered the automobile to his wife.

3. That the transfer of that certificate of title bears date September 26, 1947, the day before the fatal accident, but was not filed until November 4, 1947. While that written transfer purports to be signed by Hollis Beard before a Notary Public in North Carolina on September 26, 1947, and Betty Gene Beard purports on the same form to have applied for a new certificate of title on the same day, September 26, 1947, before the same Notary Public; it is conceded that on that day Betty Gene Beard was actually in Birmingham, Alabama, and that discrepancy is not explained by either party. The transfer was not filed with the Department of Motor Vehicles of North Carolina until November 4, 1947.

4. That, though the car had been in Alabama for a number of months at the time of the fatal accident, it continued to bear the North Carolina license tag. Under Alabama law a period of thirty days is allowed to continue to display the license tag of the foreign state, Code of Alabama 1940, Title 51, Sec. 707.

Notwithstanding these apparent inconsistencies, we are very strongly impressed with the positive and unequivocal testimony of the four witnesses and with the fact that the automobile remained in the possession and under the control of Mrs. Beard after the divorce and after Mr. Beard's marriage to another woman. Following the fatal accident, Mrs. Beard has retained possession and control of the automobile and

still had such continuous possession and control at the time of the trial although in the meanwhile she had remarried to a man named Mitchell.

█ The case was tried and submitted to the jury in every respect as if it were an action at law. The district judge in his oral charge impressed the jury with its responsibility, and instructed them that,

"any mistake I make in telling you what the law is, is not your mistake, and it can be corrected and will be corrected somewhere, but you alone can say what the facts are and nobody can correct that anywhere. So you see the vital role which a petit jury plays in the settlement of disputes between people. After you say what the facts are in this case that is the end of that, and that is what I am trying to say to you in explaining to you your duties."

However, in its final judgment the court expressed a doubt as to whether or not the plaintiff could proceed at law as a third party beneficiary, treated the verdict of the jury as advisory, concurred therein, and rested its judgment under the authority of Title 28, Sec. 12, Code of Alabama of 1940, giving the plaintiff a right of action in equity. On appeal, it seems to us that if there was any error in treating the jury's verdict as advisory and concurring therein, such error would be harmless. See 3 Am.Jur., Appeal & Error, Sec. 1143; Annotation 156 A.L.R. 1147, 1195.

█ If the judgment of the district court is based solely on the suit in equity, then its findings of fact may be set aside by this Court if in the opinion of this Court they are "clearly erroneous". Rule 52, Federal Rules of Civil Procedure, 28 U.S. C.A. United States v. U. S. Gypsum Co., 333 U.S. 364, 394, 395, 68 S.Ct. 525, 92 L.Ed. 746. That is particularly true in this case where all of the evidence is documentary or by deposition, except the testimony of Mr. and Mrs. Waldrom, and their testimony is not subject to any contradictions or inconsistencies. On the other hand, if the plaintiff had a remedy to proceed at law as a third party beneficiary and a right to a trial by jury, then the district judge must leave the case to the verdict of the jury when there is any evidence which if believed would authorize such a verdict; although, he may grant a new trial because he thinks the verdict wrong though supported by some evidence. Marsh v. Illinois Central Railroad Co., 5 Cir., 175 F.2d 498, 500; Adams v. United States, 7 Cir., 116 F.2d 199; 5 Moore's Federal Practice 2d Edition, Sec. 50.03, page 2319. Limited as is the review of a jury's verdict by the Seventh Amendment, an order denying a motion for new trial is not subject to review on the ground that the verdict was against the weight of the evidence. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481, 53 S.Ct. 252, 77 L.Ed. 439; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 248, 60 S.Ct. 811, 84 L.Ed. 1129; Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 254, 61 S.Ct. 189, 85 L.Ed. 147; United States v. Johnson, 327 U.S. 106, 111, 66 S.Ct. 464, 90 L.Ed. 562; United States v. U. S. Gypsum Co., supra; Sunray Oil Corp. v. G. T. Allbritton, 5 Cir., 188 F.2d 751; Capella v. Zurich Gen. Acc. Liability Ins. Co., 5 Cir., 194 F.2d 558.

██ From the facts of the case which have been recited, it is apparent that there was some evidence which, if believed, would authorize a verdict against the defendant, see Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720, but there is a serious question of whether the verdict is against the weight of the evidence. If the case was one properly at law with the right of trial by jury, the responsibility for answering that question rested solely upon the district judge, not subject to review by this Court unless possibly in the rare case of an abuse of discretion. Fairmount Glass Works v. Cub Fork Coal Co., supra, 287 U.S. at page 485, 53 S.Ct. 252. We would not be willing in this case to say that the district judge abused his discretion.

█ We are brought, therefore, to a consideration of the question of whether the plaintiff had a right of action at law as a third party beneficiary under the policy. The policy of insurance itself provides that any person who has secured a judgment against the insured, liability for which is insured against, "shall thereafter be en-

titled to recover under this policy to the extent of the insurance afforded by this policy." It seems clear to us that under the contract a like jurisdiction is conferred upon a court of law as is vested in a court of equity by the statute. See American Fidelity & Casualty Co. v. Werfel, 230 Ala. 552, 162 So. 103, 106; Employers Insurance Co. of Alabama v. Johnston, 238 Ala. 26, 189 So. 58; Macey v. Crum, 249 Ala. 249, 30 So.2d 666; Continental Auto Ins. Underwriters v. Menuskin, 222 Ala. 370, 132 So. 883; Hughes v. Hartford Accident & Indemnity Co., 223 Ala. 59, 134 So. 461. This Court, therefore, has no authority to review the question of whether the jury's verdict is contrary to the weight of the evidence.

We find no reversible error in the record, and the judgment of the district court is affirmed.

Affirmed.