## RUBIN BROS. FOOTWEAR, Inc. et al. v. NATIONAL LABOR RELATIONS BOARD.

### No. 14155.

United States Court of Appeals.
Fifth Circuit.
April 13, 1953.

E. Kontz Bennett, Waycross, Ga., L. E. Pedrick, Waycross, Ga., Bennett, Pedrick & Bennett, Waycross, Ga., of counsel, for petitioner.

Rosanna A. Blake, Atty., A. Norman Somers, Asst. Gen. Cnsl., David P. Findling, Assoc. Gen. Cnsl., George J. Bott, General Counsel, Dominick L. Manoli, Attorney, National Labor Relations Board, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging that the findings of the Board, that they had engaged in named unfair labor practices and had unlawfully discharged one Rawlins and one Dean, were not supported by the record, petitioners brought this proceeding to vacate and set aside the order [1] of the Board based thereon.

Pointing out that the cease and desist provisions are based on findings, (1) that petitioners had threatened to discharge Charlie Crawford and John Lord for endeavoring to persuade other employees to join the union; (2) that they had coerced their employees in violation of the law by sending out a letter [2] to all of their employees advising them of their intention to

---

[1] As material here the order required petitioners: (1) to cease and desist from discouraging membership in United Shoe Workers of America, C. I. O. or any local union thereof by discriminating against their employees, threatening them with reprisals or in any other manner interfering with, restraining, or co-

ercing them in violation of the act; and (2) to reinstate and make whole one Rawlins and one Dean.

[2] The letter read as follows:

"Rubin Bros. Footwear, Inc. will open its Waycross plant this Tuesday, October 11, 1949; and you are requested to

reopen and enclosing a card to be filled out if they desired to return to their employment; and (3) that Rawlins and Dean were discriminatorily refused reinstatement at the conclusion of an economic strike; petitioners insist that there is no reasonable basis in the record considered as a whole for these findings. We agree.

■ As to Crawford and Lord, the evidence shows without contradiction or dispute that no such threats as examiner and board found were made. All that was said to these two employees was said on petitioner's premises and during work hours in regard to and as the result of solicitation for union membership carried on there during such hours. There is no better settled principle than that the employer has the right to impose such conditions on union solicitation of membership.

■ As to the letter and card for reply, which speak for themselves, we regard the finding that it was intended to be or was coercive of the employees as an unwarranted distortion of its language, a greater distortion of its spirit.

■ The strikers having gone out on an economic strike and the plant having shut down, they were subject to loss of re-employment by replacement when it opened, and whether the letter was sent because petitioners preferred to have their old employees back or because they felt that they should be given first chance at employment, it comes, we think, with poor grace, to accuse petitioners of high pressuring their employees merely because they went to the trouble to make sure that they had first chance and to make it easy instead of difficult for them to reapply.

■ As to Rawlins and Dean, while the findings and order are in our opinion indefensible as to both, they are particularly indefensible as to Rawlins both in their content and in respect of the manner in which they were arrived at.

By the undisputed evidence and on the findings of the Board, Rawlins was one of a group of strikers including Shirey and Gunter, standing near the entrance to the plant. Observing employees Odum and Wells approaching the plant, Shirey, Gunter and Rawlins together approached them, Shirey hit Odum and Gunter hit Wells, and policemen arriving arrested Shirey and Gunter. Later in the afternoon Odum swore out a warrant charging Rawlins with hitting him and Rawlins was also arrested and placed in jail.

Petitioners in accordance with their uniform rule of discharging persons wrongfully provoking or engaging in a fight, refused to reinstate Rawlins, not because of his membership in or activities in behalf of the Union but because he had wrongfully engaged in a brawl.

In doing this, they, as they had a right to do, credited the testimony of Odum, the employee who had been ganged up on and attacked, that Rawlins had hit him. But it was not necessary in order to act as they did for them to believe that Rawlins had actually hit Odum. It was sufficient ground for refusing to take Rawlins back that, as the undisputed evidence shows he did, he ganged up on and engaged in the concerted act of trying to intimidate the two employees and prevent them from going to work by fighting with them.

But over and above all this, there is a fatal defect in the finding of examiner and board that, even if the employers in good faith believed, as the undisputed evidence shows, and even the board concedes they did, that Rawlins was a brawler, and discharged him in good faith because they so

---

report for work on that date, at your regular time.

"The laws of the State of Georgia and the United States of America guarantee your right to work, and no individual nor group may lawfully stop you. The enclosed card to be filled in by you and mailed the same day you receive this, will be considered your application for reemployment if so marked. Failure to re-

ceive your card will be an indication to us that you no longer desire your job."

The letter enclosed a self-addressed, stamped card with alternative replies to be checked off indicating whether the employees planned to return to work when the plant reopened or thereafter, were employed elsewhere, or did not wish to work.

believed, and not for his union activities, the discharge could be held discriminatory unless the employer assumed and discharged the burden to the satisfaction of examiner and board that the belief was well founded, that is that Rawlins had in fact struck a blow as Odum claimed.

This court, and we think, all other courts have held to the contrary. If anything is settled in labor law and under the act, we think it is that membership in a union does not guarantee the member against a discharge as such. It affords protection against discharge only where it is established that the discharge is because of union activity.[3] The board is without power, as it seems to have undertaken in this, and in some other of its decisions to do,[4] to lay down a rule to the contrary.

It is true that in its opinion in this case the board does after a fashion recognize the error of its former decisions, but this is only to the extent of recognizing, without in fact departing from, it. In short it keeps the promise to the ear while it breaks it to the hope. This it cannot do. But all of this aside, and taking the rule to be, as the Board erroneously declares it to be, that the employer must assume the burden of showing that Rawlins was actually engaged in the fighting, it is too clear for argument to the contrary that whether he did or did not strike a blow, he was, under the undisputed testimony and in the sense of criminal participation, aiding and abetting in the fight.

■ As to Mrs. Dean, while the evidence is not so overwhelming, the finding not so completely unfounded, as in Rawlins' case, it is perfectly plain that examiner and board tried and determined the case as to her on the same incorrect theory followed in the Rawlins' case, that Dean as a striking employee had a right to be reinstated, and that the petitioners must, therefore, show that she had forfeited that right. Having voluntarily left petitioners' employ to go out on strike, she had the right and only the right, if she applied before she was replaced, not to be refused reinstatement merely because she had gone out on strike or for any other union activity.

■ The evidence in this case, viewed on the record as a whole, establishes beyond reasonable question that she was not refused reinstatement on any such ground, indeed that she was not refused reinstatement at all. Whatever confusion or misunderstanding there was in petitioners' minds as to her priority or lack of priority over the strikers who first went out, this had no part in causing them to refuse to reinstate her. Indeed, upon the record as a whole it is quite clear that she was not refused reinstatement in the sense that petitioners discriminatorily refused to reemploy her.

The petition is granted. The board's order is vacated and set aside.

RIVES, Circuit Judge (dissenting).

The only question of law raised by this petition was that the Board could not issue a valid complaint based on a charge by a union which came into compliance with Section 9(h), 29 U.S.C.A. § 159(h), after the charge was filed, but before the complaint was issued. Petitioners' brief making that primary contention was filed on the last day of January, and on the 2nd day of February that question was decided adversely to petitioners' contention in National Labor Relations Board v. Dant, 344 U.S. 375, 73 S.Ct. 375. That decision left in this case only the fact issue of whether the Board's findings are supported by substantial evidence on the record as a whole.

It certainly is true that "the precise way in which courts interfere with agency findings [or, it might be added, with any fact findings] cannot be imprisoned within any form of words". Universal Camera Corp. v. National Labor Relations Board, 340 U. S. 474, 489, 71 S.Ct. 456, 465, 95 L.Ed. 456. Nevertheless, formulas do, or should, make

3. N. L. R. B. v. Ray Smith Transport Co., 5 Cir., 193 F.2d 142; N. L. R. B. v. Fulton Bag and Cotton Mills, 5 Cir., 175 F.2d 675; and cases cited in note 6 at page 677; N. L. R. B. v. Nabors, 5 Cir., 196 F.2d 272, at page 275; and N. L. R. B. v. Russell Mfg. Co., 5 Cir., 191 F.2d 358, at page 359.

4. 54 N.L.R.B., 933–935; 91 N.L.R.B., 783.

a difference. In Marsh v. Illinois Central R. Co., 5 Cir., 175 F.2d 498, 500, Judge Sibley explained the different standards to be applied with reference to the verdict of a jury on motion for new trial and on motion for directed verdict or for judgment notwithstanding the verdict. The decision of Pennsylvania Thresherman & Farmers' Mutual Casualty Ins. Co. v. Crapet, 5 Cir., 199 F.2d 850, turned on whether the test to be applied was that for reviewing findings of fact by the court or by the jury. The decisions of the Tax Court are now reviewed "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury". 26 U.S.C.A. § 1141. Final orders of the Labor Board, 29 U.S.C.A. § 160(e) and (f), and of Administrative Agencies generally, 5 U.S.C.A. § 1009(e) (5) and (6), are subject to the same scope of review. Universal Camera Corp. v. National Labor Relations Board, supra, 340 U.S. at page 487, 71 S.Ct. at page 463. That formula is: "findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive". 29 U.S.C.A. § 160(e). To me, that seems more restrictive than the "clearly erroneous" rule applicable to findings of fact by a court. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; United States v. United States Gypsum Co., 333 U.S. 364, 394, 395, 68 S.Ct. 525, 92 L.Ed. 746.[1]

The record here presents a typical fact case involving four or five separate issues of fact. True, the court's opinion states the correct formula, but my view of the evidence and of the limited scope of review does not permit me to concur. It seems to me the more reasonable view of the evidence is presented in the Board's decision reported at 99 N.L.R.B. No. 100. There is no point in my belaboring the several issues of fact, and I touch on them only insofar as they might furnish precedents for the future.

I do not think that the Board laid down a rule that membership in a union guarantees the member against discharge in its carefully enunciated statement as follows:

"We are now of the opinion that the honest belief of an employer that striking employees have engaged in misconduct provides an adequate defense to a charge of discrimination in refusing to reinstate such employees, unless it affirmatively appears that such misconduct did not in fact occur. We thus hold that once such an honest belief is established, the General Counsel must go forward with evidence to prove that the employees did not, in fact, engage in such misconduct. The employer then, of course, may rebut the General Counsel's case with evidence that the unlawful conduct actually did occur. At all times, the burden of proving discrimination is that of the General Counsel. This modification of the Mid-Continent rule (54 N.L.R.B. 912, 933–935) does no more than recognize the nature of the General Counsel's obligation to establish all the essential elements of a charge that discrimination has occurred when a striking employee is refused his job. It merely places an employer's honestly asserted belief in its true setting by crediting it with prima facie validity."

It seems to me also that the Board could correctly hold that the letter (footnote 2, main opinion) "sought to compel divulgence of the strikers' back-to-work intentions" and threatened "termination of employment of the strikers upon their failure to act at the Respondent's request." See Collins Baking Co. v. N. L. R. B., 5 Cir., 193 F.2d 483, 486.

I, therefore, respectfully dissent.

---

1. That the "clearly erroneous" formula allows a broader scope of review than the "substantial evidence" formula clearly appears when we consider the change from the latter to the former in the case of Tax Court decisions. "Its purpose was merely to enlarge the scope of existing review so as to do away with the rule of Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248." George Kemp Real Estate Co. v. C. I. R., 2 Cir., 182 F.2d 847, 848.