**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BRADY AVIATION CORPORATION, Respondent.**

No. 15382.

United States Court of Appeals
Fifth Circuit.

June 30, 1955.

Marcel Mallet-Prevost, Asst. Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, Arnold Ordman, Ruth V. Reel, Attys., N. L. R. B., Washington, D. C., for petitioner.

Irving L. Goldberg, Ben Pickering, Dallas, Tex., for respondent.

Before HUTCHESON, Chief Judge, JONES, Circuit Judge, and CHRISTEN-BERRY, District Judge.

HUTCHESON, Chief Judge.

In a decision [1] affirming the findings of the examiner, that respondent had violated Sec. 8(a) (3) and (1) of the Labor Management Act, 29 U.S.C.A. § 158(a) (1, 3) by discriminatorily failing to re-employ three laid off employees, Haynes, Hemphill and Moore, on whose behalf unfair labor practice charges had been filed by their union, because of their affiliations with, and activities on behalf of International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO), the Board ordered respondent to cease and desist from those and similar practices and to offer to the discriminatees immediate and full reinstatement to the same or substantially equivalent positions.

Here, seeking enforcement of its order, the Board urges upon us that the record considered as a whole fully supports the findings on which the order was based and, therefore, the order, while the respondent insists that the contrary is true.

While Board and respondent are in complete agreement that the single question presented for decision is whether substantial evidence supports the findings of Examiner and Board, that re-spondent violated Section 8(a) (3) and (1) by failing to rehire Haynes, Hemphill and Moore, they are in as complete disagreement upon what the answer to the question should be.

The Board points to the fact that in his lengthy and comprehensive report the Examiner, carefully seeking to avoid, and avoiding, even the appearance of partisanship, and painstakingly canvassing and discussing each disputed charge and claim, decided it upon what appeared to him to be its merits and not upon whether the decision favored Board or respondent. So pointing, it urges with complete confidence: that this is not a case, as some have been, where the Examiner, apparently of the fixed opinion that the Board must be right, the re-spondent wrong, systematically credits general counsel's witnesses and as systematically discredits those of the re-spondent; and that the findings thus arrived at should be read and tested in the light of these undisputed facts and, so tested, should be approved and upheld.

The respondent concedes that the Examiner did find many of the issues in the case in respondent's favor, indeed it relies to some extent upon the fact that he did so find. It yet insists that, in attributing to union animus and a resentment of their union activities the failure to hire the three active unioneers, Examiner and Board, contrary to the requirements of the Act and to the decisions under it, especially those of this circuit, went against the undisputed and unimpeached evidence of respondent's witnesses, that all the hiring was based entirely upon considerations of efficiency and economy and upon studies made and conformed to in the decisions of management, by and under which only persons best fitted for each task were selected and hired.

██ Drawing aid and comfort too from the vigorous support accorded this view by the opinion of the minority of the Board, the respondent confidently presses upon us its contention that the Examiner and the majority of the Board

1. Reported at 110 N.L.R.B., No. 13.

are wrong, the respondent and the minority of the Board are right. We do not think so. We certainly agree with the minority that union membership is not a guarantee of a job and that the burden is on the Board to prove and not on the employer to disprove the presence of anti-union animus or other prohibited discriminatory motivations in hiring and firing, and we do not understand the majority to think differently. From the earliest beginnings in the Tex-O-Kan case, N. L. R. B. v. Tex-O-Kan Flour Mills Co., 5 Cir., 122 F.2d 433, and consistently thereafter we have so held. Cf. N. L. R. B. v. Fulton Bag & Cotton Mills, 5 Cir., 175 F.2d 675, and cases cited in note 6 of page 677; and N. L. R. B. v. Ray Smith, Transport Co., 5 Cir., 193 F. 2d 142.

We cannot agree, though, with what seems to be implicit in the opinion of the minority that, though there is some evidence from which the Board might find anti-union reasons for not rehiring the three girls in question, it may not, or ought not to do this because respondent's witnesses have testified categorically that the choices for hiring were made for economic reasons and economic reasons only. Indeed, we cannot read the record as a whole, and particularly the colloquy between management and one of the employees, who was seeking reemployment, with respect to her having made unfair labor charges and to whether she would be willing to withdraw them, without coming to the conclusion that for Examiner and Board to have accepted as the real reasons for the failure to rehire the three, on whose behalf the unfair labor charges were made, the ones put forward by respondent would have proved again the truth of the adage that "There are none so blind as they who will not see". Cf. N. L. R. B. v. Robbins Tire & Rubber Co., 5 Cir., 161 F.2d 798, at page 801.

We, of course, credit both the majority and minority of the Board with the utmost sincerity and conviction in espousing and putting forward their differing views. We do not doubt that each has called the facts and conclusions to be drawn from them as it sees them. While, therefore, we cannot agree that this is the effect of the holding of the majority, we accept as sincerely entertained and expressed the views of the minority, that the implications of the holding of the majority in this case are: that if an employer knows that one applicant is, or has been, a union sympathizer and the other has not, he cannot prefer the non-union job applicant over the other without the risk of being charged with an 8(a) (3) violation; and that if he does decide to do so, and a charge is filed, he must, in order to exculpate himself, prove that he had a valid reason for his preference by satisfying Trial Examiner and Board that he and it would have chosen in the same manner, and we agree with the minority that if this were the effect of the holding of the majority, that holding would be wrong. In the same way, while, if we could agree with the majority that "Under the dissenters' apparent concept of the law the Board would be bound to accept, to avoid the charge of substitution of judgment, the Respondent's unsupported economic contention", we should, of course, agree with the majority that "This would lead to the absurd result that no discrimination could ever be found unless the employer openly admitted it."

We think, too, that the statement with which the majority concludes its opinion:

"In conclusion, we wish to state affirmatively that although we cannot control the hazard of litigation which is a natural concomitant of doing business, no employer need fear an adverse finding by the Board simply because he rejects a known union adherent, provided his decision is in fact based on economic and not union considerations."

is a correct one, assuming, as we do, that implied in it is the correct rule that the burden to make out a case of discrimination rests continuously on, and does not shift from, Board to Respondent.

Finally, we think it highly creditable to the Board and good for its health,

and that of those who depend upon it for just counsel and wise decisions, that differences of opinion are, as here, brought out into the open in candid and fair discussion. In holding with the majority, therefore, we are not in any sense doing so critically or by way of taking sides. We are merely discharging our function of determining and declaring, as we see it, whether the findings of the Board are supported on the record. In the discharge of that function in this case, we are constrained to conclude and to declare that the findings of Examiner and Board are well sustained by the record and that the order should be enforced.

Petition granted. Order enforced.