WINTER GARDEN CITRUS PROD-
UCTS COOPERATIVE,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 15879.

United States Court of Appeals
Fifth Circuit.

Nov. 14, 1956.

Motion to Amend Decision Denied
Jan. 11, 1957.

E. Kontz Bennett, Waycross, Ga., for petitioner.

Abraham Siegel, Atty., N. L. R. B., Washington, D. C., David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Theophil C. Kammholz, Gen. Counsel, N. L. R. B., Washington, D. C., Frederick U. Reel, Atty., N. L. R. B., Washington, D. C., for respondent.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

CAMERON, *Circuit Judge.*

Winter Garden Citrus Products Co-Operative petitions for a review of an order of the National Labor Relations Board [1] requiring petitioner to cease and desist from certain unfair labor practices and to reinstate striking employees to their former jobs, such reinstatement being based upon its determination that the strike involved was caused in part by these unfair labor practices. The question before us is whether there is substantial evidence in the record, considered as a whole, to support the Board's findings and order with respect to the separate violations dealt with.

Petitioner is a Florida corporation engaged in the processing of citrus fruits, operating upon a seasonal basis. The peak runs from about December 1st to June 1st, with a short lull in March between the early and late crops. In December, 1953 Mr. E'Dalgo, representing the American Federation of Labor, began organizational activities at the plant of petitioner. In March following, a consent election was held resulting in

1. 114 N.L.R.B. No. 165. The Board had prayed, in its answer, for enforcement of the order.

certification by the Board of the union as the bargaining representative of the employees. Negotiations for a contract between the Company and the union were begun March 17th and continued through a number of meetings until April 21st, when a strike was called.

▇▇ The General Counsel introduced testimony from which the Trial Examiner found that the employer demonstrated, in the days preceding and immediately following the election, a hostility towards the union and opposition to its coming into the plant. He also produced witnesses who testified that the employer, following the seasonal lay-off coming shortly after the election, made effective without consultation with the union, rules of work which had not theretofore been enforced. These related to such matters as smoking and conversing on the job, visits by employees to the coffee shop, increase of work loads and grading down of certain employees. In such instances, non-union workers were accorded better treatment than those who had openly affiliated with the union. We do not feel constrained to disturb the Board's findings and order on these phases of the case, following as it did, in the main, the findings of the Examiner.

▇▇ These practices had promptly become the subject of complaint asserted through shop stewards selected by the union and distributed throughout the plant. It is apparent from the record that these complaints were of a relatively minor nature which were, in the main, satisfactorily handled (there being no evidence that any had been left unsettled) [2] and that the execution of a contract between the employer and the union with satisfactory wage provisions was the central theme which occupied the attention of all concerned. Practically all of the efforts of the organizer were directed towards bringing about a satisfactory arrangement in that vital field, and a number of bargaining sessions were held in connection with it. The labor practices above outlined had never been considered by anyone as having such an importance as possibly to occasion a strike. There must be proof of causal connection between the two to justify the finding that the strike was bottomed in part upon unfair labor practices entitling striking employees to reinstatement.[3]

A careful reading of the evidence here fails to convince us that the Board had before it substantial evidence upon which to base its finding of such a causal connection. That finding rests upon the testimony of Mr. E'Dalgo, who occupied the unfortunate dual role of advocate and witness in the proceedings before the Examiner. Attributing to his testimony such probative force as it intrinsically commands, but taking into account what detracts from it and relating it to the evidence as a whole, it appears that what he said was so highly improbable as to be counted plainly incredible. Cf. Universal Camera Corp. v. N. L. R. B., 1950, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

The strike began April 21st, immediately after the conclusion of a four hour bargaining session in which the employer had submitted a written contract which, with the wage schedule proposed, was the principal topic of discussion. Two days thereafter and before further contact was had between the parties, the union filed with the Labor Board formal charges against the employer based sole-

---

2. The testimony of Mr. Riffle, a shop steward for the union, is illustrative:
    "Q. Now as a shop steward, were grievances or complaints brought up from time to time for discussion with the company? A. There were a few, sir. If I took all the gripes I would have stayed in the company office all the time, sir.
    "Q. But there were a few brought up? A. Yes, sir.

"Q. Were they satisfactorily settled?
A. Yes, sir.
    "Q. You don't know of any that you brought up that were not settled, do you, Mr. Riffle? A. No, sir."
3. Cf. N. L. R. B. v. Crosby Chemicals, Inc., 5 Cir., 1951, 188 F.2d 91; N. L. R. B. v. Jackson Press, Inc., 7 Cir., 1953, 201 F.2d 541; and N. L. R. B. v. James Thompson & Co., Inc., 2 Cir., 1953, 208 F.2d 743.

ly on its assertion that the employer had been guilty of the unfair labor practice of refusing to bargain in good faith.[4]

Upon the expiration of two days after the filing of these charges and after two additional bargaining sessions had been held, Organizer E'Dalgo sent the employer a telegram in which he declared that the strike was caused by the company's "refusal to bargain in good faith and did discriminate against members of Citrus Workers' Union 24925 * * *." He followed that telegram with a letter the following day repeating the quoted assertion.[5] It is worthy of note that the telegram and the letter demanded only reinstatement of the strikers and continuation of the negotiations.[6]

These two communications were sent about half way between the beginning of the nine-day strike and the unconditional offer to return to work. The Trial Examiner found them quite convincing in establishing that the strike resulted in part from the labor practices outlined, and the Board likewise apparently accorded great weight to them. With this, we are not able to agree. Viewed in connection with the evidence as a whole of what was transpiring, these documents appear to be the self-serving actions of a man who saw his cause slipping and who set about, by the expedient of argumentative communications having no relevance to the situation of the parties or the status of the negotiations as depicted by the other credible testimony but at war therewith, in an attempt to salvage what he could from the ineffectual strike. Instead of strengthening the Board's conclusions, these communications have the effect of weakening them, it being clear that they were an ex parte effort to make a record by assuming an attitude which was inconsistent with other facts definitely established.

On the other hand, the statement of the labor consultant brought into the case by the Company a week before the strike, that he never heard of any contention that discrimination had been practiced against union members and that the strike was influenced thereby, until long after the strike had ended, is supported by what is found in the record as a whole. In fact, the new charge embracing the alleged unfair labor practices was not filed with the Board until May 10th, ten days after the strike had been called off.

The order requiring reinstatement is denied enforcement and the cease and desist order is enforced.

## On Motion to Amend.

### PER CURIAM.

Upon considering the motion of National Labor Relations Board praying that this Court amend its decision of November 14, 1956 and remand the case to the Board by striking the final paragraph of the decision and substituting a direction that the case be remanded to the Board for the purposes therein stated; it is ordered that said motion be and it is denied.

---

4. The fact that these charges were withdrawn after the strike was ended does not detract from their force as a revelation of what was in the union's mind and a spontaneous declaration as to the cause of the strike.

5. Two bargaining sessions had been held between the filing of the charges with the Labor Board and the sending of these two communications and meantime the plant was conducting a successful operation despite the strike.

6. This demand was set forth in the telegram in these words: "The Union demands that your company immediately offer to all strikers reinstatement to their former or equivalent position with full seniority and other rights and make them whole for all monies lost. The Union further demands that your company agree to proceed to negotiate with said Union in good faith."