NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WINTER GARDEN CITRUS PRODUCTS
COOPERATIVE, Respondent.

No. 17157.

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1958.

**914**

James A. Flynn, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Jerome D. Fenton, Gen. Counsel, Frederick U. Reel, Morris A. Solomon, Attys., N. L. R. B., Washington, D. C., for petitioner.

E. Knotz Bennett, Waycross, Ga., Bennett, Pedrick & Bennett, Waycross, Ga., of counsel, for respondent.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

Here pursuant to Sec. 10(e) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(e), seeking enforcement of its decision and order, reported in 116 N.L.R.B. 738, the board asserts and seeks to maintain that substantial evidence on the record as a whole supports its findings. These, as set out in its order and argued in its brief, are: (1) that respondent violated Sections 8 (a) (3) and (1) of the Act by discriminatorily refusing to hire 26 job applicants because of their union membership or activity, and (2) that it violated Sec. 8(a) (5) and (1) of the Act by refusing to bargain with the union (a) by refusing to recognize union stewards for the purpose of settling grievances, and (b) by refusing to furnish information requested by the union, the certified bargaining representative of its employees, with respect to year end gratuities given by respondent to a few of its employees who had performed services beyond the call of duty.

Vigorously resisting enforcement, respondent denies that the record supports the findings. Indeed, it insists that they are based not upon evidence but upon suspicion and find their sole support in what the examiner and board call background evidence, which in turn is based "upon the unfair labor practice finding against respondent in the prior action against it."

Calling our attention to the fact that, as the board states the situation in its findings, "In the prior case 23 of the 26 complainants herein were found to be discriminated against as unfair labor strikers, and 19 of them were ordered reinstated with back pay", and that this court, in Winter Garden Citrus Products Co-op v. N. L. R. B., 5 Cir., 238 F.2d 128, holding that the strike of respondent's employees was an economic one, reversed these findings and order, respondent insists that the board's persistence in pressing these charges against respondent in this case is but another proof of the old adage that one convinced against his will is of the same opinion still. Arguing that the hearing and decision of examiner and board in this case has been dominated and controlled by the views and the orders of the board in the earlier case, respondent insists that examiner and board approached this case with, and decided it from, a point of view which, depriving respondent of a fair and impartial consideration on its own merits of this record, predetermined for them the findings and order herein.

Pointing to the overemphasis on the proceedings in the earlier case as background evidence and to the examiner's apparent attitude in this case, that the burden was on the respondent to show that it did not, rather than upon the general counsel to show that it did, discriminatorily refuse employment as charged, an attitude strongly reminis-

cent of that exhibited in N. L. R. B. v. Ray Smith Transport Co., 5 Cir., 193 F. 2d 142, 144 et seq., respondent insists that it was under the influence of this attitude that the examiner, instead of, as he ought to have done, finding the complaint not proven, found against the respondent on the ground that it had failed to assume and discharge the affirmative burden of showing that it had not acted discriminatorily.

In addition, the respondent points as further characterizing the examiner's attitude in this case to the fact: that the board disapproved many of the examiner's findings, particularly the finding that respondent had discriminatorily denied a bonus to one Traywick and the finding that there was a discriminatory failure to recall the complainants for work on December 13; and that in an endeavor to mend these findings which, though intended to be controlling in the case, were wholly without support in law and in fact, the board, on the basis of its findings made in the earlier case, without any substantial evidence to support them, made a finding of its own that the respondent discriminatorily refused employment to the 26 complainants subsequent to their application for employment.

With respect to the findings that the respondent refused to bargain, respondent insists that the undisputed evidence shows that the sums about which the union sought information were not bonuses paid to employees generally as a part of their compensation, but largesses, gratuities conferred upon a few, not publicly but privately, as a bounty or reward for actions or conduct beyond the call of duty, and, therefore, having no connection with bargaining, so that its failure to disclose this private information to the union was not and could not be a refusal to bargain.

Further pointing out that there were no bargaining sessions going on at the time of the request for this information, respondent insists that it is evident from the record that the request was made by the union for the purpose of not obtaining information for bargaining but of prying into private matters having no connection therewith and thereby embarrassing respondent by creating dissension and dissatisfaction among its employees.

Finally, it insists that in view of its expressed willingness to bargain about any bonus provision the union desired to discuss, it is quite plain that the refusal to answer the inquiry about these payments could not in any reasonable view constitute a refusal to bargain, and the charge is a mere make weight.

As to the charge that the refusal to continue to recognize union stewards long after their use had been discontinued was a refusal to bargain respondent, insisting that the complained of action could not be so regarded, points out: that the setting up of the shop stewards was a temporary arrangement resulting from the offer of the respondent made shortly after the consent election to use them pending contract negotiations and before a contract was reached; that no contract arrangement was ever reached; and that the employees went on strike and the system was never used afterwards. It further points out that the arrangement was not abandoned by the employer; that the union itself allowed it to fall into complete disuse, and that the respondent, in stating its position with respect to the discontinuance of the use of stewards, advised the union that the matter could be discussed by the union with respondent at any time, and named Mr. Longacre as its authorized representative to bargain on the issue or discuss it further with the union, and Longacre testified that he indicated to the union that the respondent would permit it to designate a representative for the union who would be invited to every settlement of a grievance between the company and the employees, and that the union took no action on this offer.

Counsel for the board, recognizing the complete absence of any direct evidence to support the board's finding that respondent discriminatorily *refused* employment and that, but for the back-

ground furnished by the discredited findings in the earlier case, there is not sufficient circumstantial evidence to carry the burden of affirmatively showing that there was such discrimination, find themselves hard put to it to support their claim that the board has made out a case. Falling into the same error that the examiner fell into, that the burden was not upon the board to establish, but upon respondent to exculpate itself from, the charges, and, insisting that the respondent failed to do so, counsel for the board argue that because *"no plausible reason has been advanced for respondent's failure to hire these applicants for jobs they were qualified to perform when such jobs became available"* (emphasis supplied), it must be held that the respondent has convicted itself by failing to prove its innocence.

Quoting from N. L. R. B. v. Shedd-Brown Mfg. Co., 7 Cir., 213 F.2d 163, 175, "The burden of giving an adequate explanation for failure to rehire *was imposed upon respondent by all the other evidence which gave rise to an inference of discrimination.*" (emphasis supplied), counsel refrains, from pointing to any showing on this record, except the discredited background evidence, which would give rise to such an inference, and, at the same time, refrains from quoting from the same case at page 172 of 213 F.2d, the true principle controlling here: "The burden was upon the Board to show by substantial evidence on the record as a whole that * * * were discharged because of their activities in support of the Union."

█ It is not and never has been the law that the board may recover upon failure of the respondent to make proof. The burden is on the board throughout to prove its allegations, and this burden never shifts. It is, of course, true that if the board offers sufficient evidence to support a finding against it, a respondent, as stated in the quotation first above, stands in danger of having such a finding made unless he refutes the evidence which supports it. But it is wholly incorrect to say or suggest that the bur-

den of showing compliance with the act ever shifts to the respondent. The burden of showing no compliance is always on the board. Even in cases of actual discharges, cases in short in which the respondent has taken affirmative action against an employee, this is true, as this court has many times held.

No court has better stated or more consistently applied this controlling principle than this one. While the cases in this court applying it are legion, N. L. R. B. v. Tex-O-Kan Flour Mills Co., '5 Cir., 122 F.2d 433, at pages 438–439, reaffirmed continuously thereafter in many cases, including N. L. R. B. v. Smith, supra, and N. L. R. B. v. McGahey, 5 Cir., 233 F.2d 406, 411, may be cited as examples of its clear recognition and enforcement. In the last case, this court, stating with reference to discharges claimed to have been discriminatorily made, that explanations made for the discharges would "sustain the burden if it rested upon the employer to prove that the discharge of each was for stated reasons," went on to say:

"But the employer does not bear *this duty. It is, rather on the General Counsel to establish by acceptable substantial evidence on the whole record that discharge came from the forbidden motives of interference in employee statutory rights. The burden long imposed by this Court,* N. L. R. B. v. Miami Coca-Cola Bottling Co., 5 Cir., 222 F.2d 341; N. L. R. B. v. Brady Aviation Corp., 5 Cir., 224 F.2d 23; N. L. R. B. v. Alco Feed Mills, 5 Cir., 133 F.2d 419; N. L. R. B. v. Tex-O-Kan Flour Mills Co., 5 Cir., 122 F.2d 433; N. L. R. B. v. Ray Smith Transport Co., 5 Cir., 193 F.2d 142, *has added sanction by express terms of the Act.*" (Emphasis added.)

██ If, as there stated, hiring and firing are the prerogatives of management which it may exercise for any reason or no reason at all except as limited by contract or forbidden by statute, it is clear beyond question that when, as

here, applicants have no preferential right to employment, evidence alone, that they applied to management for re-employment and were not employed, cannot possibly satisfy the general counsel's burden to make out a case. Indeed it is not any evidence of discrimination. This is so because the respondent had an absolute right to employ or not to employ any one he pleased, former workers or new workers, including the absolute right to employ only new workers. Unless, therefore, it is made to appear by *evidence on the record* not merely that he failed to reemploy the former employees in question but that he refused for discriminatory reasons to do so, there is no basis for a finding of unfair labor practices in respect to these persons. There was no such evidence, and the only plausible explanation on this record for the findings is the so-called background evidence of the earlier case, on which the board had predicated its earlier finding, that the applicants were unfair labor practice strikers. When the findings and order of the Board were made in this case, this court had not rejected the earlier findings as unsupported, and it was only natural that the board would adhere to them in principle in their findings in this case; and that, thinking that these applicants had gone out on an unfair labor practice strike and had preferential rights to be taken back, would find that the mere failure to take them back was discriminatory.

Since, however, it has now been determined in this court that the evidential basis for making these findings did not exist, the so-called background evidence furnished by them disappears, and this case must be viewed in its true perspective as one in which management, in the exercise of its just prerogative, employed many of those who had gone out on strike but did not employ all, including those for whom the board has so persistently taken up the cudgels. Of the opinion, therefore, that the findings of examiner and board are based not on substantial evidence but on suspicion and on the persistence of the view expressed in the earlier case, that the employees had gone out on an unfair labor practice strike and, because it was such a strike, had been discriminated against by *not being accorded preferential hiring,* we reject as unwarranted the findings of discrimination and deny enforcement of the order based thereon.

As to the matters claimed as refusals to bargain, little more need be said than that it seems quite clear to us that these are mere make weights thrown in to furnish background support for the principal findings of discrimination, and that, upon the undisputed facts, the findings as to them are without substantial support in law and in fact.

■ In the first place, as carefully and correctly pointed out in respondent's brief, the so-called bonus payments were not such. Paid not publicly to employees generally and as part of their compensation, but privately to a few as a bounty or reward for actions, attitudes or conduct beyond the call of duty and having no connection with or relevancy to bargaining, the failure to disclose this private information to the union was not, it could not be considered as, a refusal to bargain. In the second place, there were no bargaining sessions going on when the information was requested, and it is evident that the request was not made as a part of good faith bargaining but for the purpose of embarrassing respondent and creating dissension and dissatisfaction among the respondent's employees by prying into matters not of public, but of private, concern.

■ Of the complaint about the stewards, it is sufficient to say that the record as a whole supports the claim of the respondent: that the setting up of the stewards was a mere temporary device until a contract could be signed; that their use was never embodied in a contract nor was any contract arrived at, and it was, therefore, not an unfair labor practice not to continue their use. This is especially so since the record shows: that, when this matter came up, the union was not making any use of them, there

was no real necessity for continuing them, and the respondent specifically offered to discuss with the union the matter of their use or some substitute therefor. The findings in respect of these matters are, therefore, rejected, and enforcement of the order relating to them is also denied.

Enforcement denied.