SHOPMEN'S LOCAL UNION NO. 733, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, A. F. L., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 12285.

United States Court of Appeals, Sixth Circuit.

March 2, 1955.

Fred W. Elarbee, Jr., Atlanta, Ga. (Poole, Pearce & Hall, Edwin Pearce, Atlanta, Ga., on the brief), for petitioner.

Wilson Sims, Nashville, Tenn. (Cecil Sims, Bass, Berry & Sims, Nashville, Tenn., on the brief), for intervener.

Fannie M. Boyls, Washington, D. C. (George J. Bott, David P. Findling, Marcel Mallet-Prevost, and Robert G. Johnson, Washington, D. C., on the brief), for respondent.

Before MARTIN, MILLER and STEWART, Circuit Judges.

MARTIN, Circuit Judge.

The local A. F. of L. union named in the caption filed a petition to review a decision of the National Labor Relations Board, from which two of the five board members dissented. In view of the fact that this court, and all the other circuit courts of appeals, have loaded the law books with weighty fact reviews in cases arising under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., we consider it unnecessary in the present controversy to detail the facts or to restate reasoning and authority so often applied by this court. The case is, in our judgment, a mine-run litigation in the field, except as to one proposition which we shall attempt to discuss.

The majority of the labor board affirmed the rulings of the trial ex-

aminer and, in the main, adopted his findings, conclusions and recommendations. The majority agreed with the trial examiner's findings that the respondent company had not violated section 8 (a) (5) of the Act during bargaining negotiations with the union in February and March 1952, because an impasse was reached concerning the union's request for a wage increase. The majority held that respondent's admitted refusal to discuss with the union the transfer of employees from the Northside Plant to the River Plant constituted at most a mere technical violation of the Act of such nature as would require no remedial order, inasmuch as no discrimination had been shown.

The board upheld the trial examiner in holding that the respondent violated section 8(a) (1) of the Act by soliciting strikers to return to work, with promises of economic benefits. There was unanimous agreement by the board members with the trial examiner's finding that the strike, which began on March 17, 1952, was an economic strike in its inception; but the board members asserted divergent views as to the interpretation and legal consequences of a letter from the respondent to the strikers of date April 18, 1952. The crucial letter read, as follows: "You are hereby notified that work will be available in our Northside Plant beginning the twenty-third day of April, 1952. You are notified to return on that date and failure to do so will be deemed an indication on your part that you do not desire reemployment in our plant, and your employment will thereupon be permanently terminated. No discrimination or hard feelings will be held against anyone, and there will be no change in seniority, wage rates, vacation pay, holiday pay, or your life insurance and hospitalization for you and your family. So if you want to work for us, your job will be here Wednesday for you to report to. Let us all forget the past and look forward to good and pleasant working conditions."

As to this letter, the parties stipulated that it was treated by the respondent as a termination notice to the employees to whom it was sent, as indicated by its terms. The stipulation provided further: "No other termination notices were issued to striking employees who did not return to work. Copies of the letter were attached to the individual striker's personnel files, and such files were removed from the active file cabinet to the inactive file cabinet. The active file cabinet contains the personnel files of employees currently working, on sick leave, or temporarily laid off. The inactive file cabinet contains the personnel files of employees who are deceased, quit, or terminated."

The board found that, on or before the date mentioned in the letter, 35 strikers returned to work; and, after that date (April 23, 1952), 18 strikers applied for work. Of the 18, fourteen were reinstated; and, between April 23 and July 7, 1952, a total of 180 new employees were hired, but no replacements for strikers were hired before April 23. It was found, further, that the bulk of the new hiring occurred in May of 1952, when a hundred workers were employed; and that 135 employees went on strike. The strike was found to be still in progress.

The majority opinion stated that the letter of April 18, 1952, did not in fact constitute a discharge of the strikers who failed to report after April 23, 1952; and that, notwithstanding the literal language of the letter, the subsequent conduct of the respondent had been inconsistent with the view that those strikers who failed to report by the aforementioned date had, in fact, lost their protected employment status and rights on that date. The board pointed out, further, that the record showed that after, the critical date, 14 strikers applied for work and were given employment; that employees were not discriminated against in any way because they exercised their right to continue to strike after April 23; and that the four strikers who were not reemployed had been replaced as economic strikers before they applied for reinstatement.

It is true, of course, that the rights of striking employees to reemployment are conditioned upon the right of an employ-

er to make replacements. National Labor Relations Board v. Mackay Radio and Telegraph Co., 304 U.S. 333, 345, 58 S.Ct. 904, 82 L.Ed. 1381. The board asserted that the record failed to disclose a single instance where a striker who had not been replaced was denied employment after April 23. The majority of the board considered that the "objective conduct" of the respondent showed that the respondent did not, by its letter of April 18, impair the protected status of the striking employees. The opinion stated that two members of the board in the majority group did not condone the use of the letter of April 18, it being regarded by them as an unlawful strike-breaking technique, violative of section 8(a) (1) of the Act; but that, even so, it was not believed that the record as a whole established the letter to be an unfair labor practice of such nature as to convert the economic strike into an "unfair labor practice one." The strikers were, therefore, held to be entitled to no remedial order.

One member of the majority group concurred in the result reached but did not agree that the letter violated section 8(a) (1), considering it merely a valid notification to the strikers that unless they returned to work by April 23 the respondent would exercise its right under the Act to replace economic strikers. This single member considered that it would be inconsistent to characterize as "unlawful" an employer's written statement that he intended to exercise his concededly lawful rights under the Act. He considered the board's policy with respect to the subject matter of the letter as making the transaction a game of words; and stated that, had the employer chosen to use the words "I will replace you" instead of the equivalent language in the first paragraph of the letter, there would be no quarrel with its right to state its intention. This member considered that there was over-emphasis by two of the majority members on the form instead of the substance of the Act.

The petitioner urges vigorously that a stipulation entered into between the parties provided that the letter was a termination notice, and that the employees who had not reported back to work were "terminated" on the date specified. The attorney for the respondent company answers that this stipulation did not state that the employees were discharged on April 23, 1952, but merely stated that their employment terminated on that date. He urges further that, at some time after April 23, the file jackets of the strikers who had not returned to work were removed from the "active" file cabinets and placed in the "inactive" file cabinets, on the assumption that the particular employees had "quit." It is contended that the stipulation affirmatively shows that the jobs were held open and that those who came back to work were given employment. We think the contention of the respondent is sound in its reasoning.

We have reached the conclusion that the decision and order of the National Labor Relations Board is valid and in all respects proper.

Accordingly, the petition for review is denied.