**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**ASSOCIATED WHOLESALE GROCERY
OF DALLAS, Inc., Respondent.**

**No. 17333.**

United States Court of Appeals
Fifth Circuit.

Jan. 14, 1959.

Elmer P. Davis, Chief Law Officer, N. L. R. B., Fort Worth, Tex., Thomas J. McDermott, Associate Gen. Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Jerome D. Fenton, Gen. Counsel, Frederick U. Reel, Alice Andrews, Attorneys, National Labor Relations Board, Washington, D. C., for petitioner.

Emil Corenbleth, Dallas, Tex., for respondent.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

The question presented by petitioner's prayer for enforcement of its order of

October 18, 1957, is whether respondent violated the National Labor Relations Act [1] by sending its striking employees two letters which, as held by the Board, constituted a discharge based upon the striking activities of the employees. Respondent is a wholesale grocery company in Dallas, Texas. No question is raised as to the applicability of the Act.

Dallas General Drivers, Warehousemen and Helpers, Local No. 745, AFL–CIO was certified as the exclusive bargaining agent of respondent's employees. The Union and respondent were unable to agree on contract terms and the employees went out on strike on August 27, 1956. It is conceded that the strike began as an economic strike.

On the same day that the strike began respondent sent the striking employees a letter.[2] The strikers did not return to work by the deadline set out in the letter and respondent, on August 29th, sent a second letter.[3]

August 31, 1956, the Union filed unfair labor practice charges against respondent, alleging that the strikers were unlawfully discharged. The Trial Examiner, on the basis of the two letters involved, concluded that respondent violated § 8(a)(1) and (3) of the National Labor Relations Act by threatening to discharge the strikers, and by thereafter discharging them for participating in the strike. The Board upheld this finding of the Trial Examiner and ordered respondent to cease and desist from violating the Act and to reinstate the strikers with all privileges and rights to which they were entitled before the strike, including back pay. Two members of the Board dissented.

The law is well settled that respondent is free to replace the strikers so long as they are not discharged because of their striking activities. Collins Baking Co. v. N.L.R.B., 5 Cir., 193 F.2d 483; and Bentley Lumber Co. v. N.L.R.B., 5 Cir., 1950, 180 F.2d 641. This is conceded by the majority of the Labor Board, but it found that the two letters constituted a discharge of the striking employees because they were striking and that the strike which was initially economic was, by these two letters, converted into an unfair labor practice strike. The Board wrote a short decision adopting the findings, conclusions and recommendations of the Trial Examiner. The Examiner based his conclusions chiefly on our decision in N.L.R.B. v. United States Cold Storage Corporation, 5 Cir., 1953, 203 F.2d 924, certiorari denied 346 U.S. 818, 74 S.Ct. 30, 98 L.Ed. 344; and the petitioner places its greatest reliance on that case in the argument before us.

The two dissenting members of the five-member Board considered themselves bound by the former decision of the Board in Kerrigan Iron Works, Inc., 108 N.L.R.B. 933, which they thought

---

1. 29 U.S.C.A. § 151 et seq.

2. "You have walked off your job and refused to work without the Company's consent.

"Unless you return to work at your regular time on Wednesday, August 29, 1956, your employment with this Company is terminated, and your former job will be permanently filled.

3. "On August 27th the company wrote you that you had walked off your job without permission and refused to work, and that if you did not return to work by Wednesday, August 29th, at the regular time your employment would be terminated and your former job permanently filled.

"You failed to report for work and your employment is terminated. Enclosed find the company's check for work done by you before you walked off your job. The company will now hire new employees to permanently fill the job you and others held with the company before the strike.

"If, promptly after the strike ends, or sooner, if you desire, you wish to be reemployed by the company you should make written application to the company. If, at the time of such application, your former job has not been permanently filled, the company will reemploy you to work at your former job upon the same terms and conditions of your former employment."

controlled.[4] Respondent bases its argument before us chiefly on that case and on our decision in Rubin Bros. Footwear, Inc., v. N.L.R.B., 5 Cir., 1953, 203 F.2d 486. The facts before the Board here were undisputed, and its decision, therefore, involved only the application of legal principles to established facts. Analysis of the facts [5] leads, in our opinion, inevitably to the conclusion that the Board committed an error of law in entering its order. The Trial Examiner and the Board made two fundamental mistakes: in singling out the word "terminated" in the two communications and permitting it to color the whole of the writings in derogation of the rule requiring that every phrase and word in the writings must be looked to and given effect so that the intent of the parties will be discovered from the writings as a whole; and in divorcing the writings from the actions of the parties construing and implementing them.[6]

In committing these two errors we think that the Board rejected the rule generally applied to labor relationships in determining whether there have been unfair labor practices, of looking to the entire transaction, including all of the actions of the parties as well as all of the words they employed.

An examination of United States Cold Storage will illustrate this statement. The employer there sent two communications in which a deadline was fixed for the strikers to return to work, and they were told that, since they did not return to work, "consequently we consider you are no longer an employee of the company." [203 F.2d 926] The words of the communications were supported by the testimony of the company's manager, who stated categorically that the strikers' employment was terminated upon the expiration of the deadline. Moreover, the Union made four separate requests in writing upon the employer for further bargaining sessions, which were refused by the company in derogation of decisions of this Court, pointed out in the opinion.[7] It is clear that our order enforcing the Board's petition in that case was bottomed upon the entire course of conduct and the testimony of the company's manager and not alone upon the writings.

In Rubin Bros., supra, rendered a few days before that case, we went into the facts detailing the action which followed the sending of a letter by the employer and, based upon the letter and the subsequent actions of the parties we vacated the Board's enforcement order.

The Kerrigan case, as we read it, bears a closer resemblance to the facts of this one than any of the others cited by either side. The language of the notice mailed to the employees in Kerrigan is unequivocal and is stronger than the language with which we are dealing.[8] The Board held in that case that "the objec-

---

4. Affirmed *sub nomine* Shopmen's Local Union No. 733, Intern. Ass'n of Bridge, Structural & Ornamental Iron Workers, A.F.L. v. N. L. R. B., 6 Cir., 1955, 219 F.2d 874, certiorari denied 350 U.S. 835, 76 S.Ct. 70, 100 L.Ed. 745.

5. Which will be adverted to only briefly, in line with sentiments, which we approve, expressed by the Sixth Circuit in Shopmen's Local, etc. v. N. L. R. B., supra: "In view of the fact that this court, and all the other circuit courts of appeals, have loaded the law books with weighty fact reviews in cases arising under the National Labor Relations Act, * * * we consider it unnecessary in the present controversy to detail the facts or to restate reasoning and authority so often applied by this court."

6. Petroleum Financial Corporation v. Cockburn, 5 Cir., 1957, 241 F.2d 312; American Aviation & General Insurance Company v. Georgia Telco Credit Union, 5 Cir., 1955, 223 F.2d 206, 51 A.L.R.2d 316; Guaranty Trust Company of New York v. Williamsport Wire Rope Co., 3 Cir., 1955, 222 F.2d 416; City of Orlando v. Murphy, 5 Cir., 1936, 84 F.2d 531.

7. 203 F.2d at page 928.

8. "You are notified to return on that date and failure to do so will be deemed an indication on your part that you do not desire reemployment in our plant, and your employment will thereupon be *permanently* terminated." 219 F.2d at page 875. [Emphasis added.]

tive conduct of the respondent showed that the respondent did not, by its letter * * * impair the protected status of the striking employees," and the Court of Appeals of the Sixth Circuit approved, 219 F.2d at page 876.[9]

Petitioner, standing under the risk of non-persuasion, introduced no evidence tending to prove that the wholesale grocery company did not write and perform in good faith the concluding words of its communications,—"the company will reemploy you to work at your former job upon the same terms and conditions of your former employment." This unequivocal language laid an enforceable obligation upon the employer and tended to give meaning to the residue of the two letters.

In fact, the Trial Examiner found that none of the jobs of the strikers were filled on a permanent basis until forty-five days after the two letters were sent, and that all former employees who applied were given their old jobs or their equivalents. Construing the writings as a whole, therefore, in the light of the actions of the parties under them, we hold that the striking employees were not discharged and that the findings of unfair labor practices were without foundation in the record and that, as a matter of law, from undisputed proof the Board's decision and order were erroneous.

Enforcement is, therefore, denied.

9. The language of the minority of the Board in this case furnishes a good analysis of Kerrigan and its application here:

"The majority relies on two items which it believes distinguish Kerrigan from this case. They relate to inferences to be drawn from the wording of the letters rather than from the total strike situation of which the letters are a part. *Thus, the majority points to phrases in Respondent's letter of August 29, which imply that the strikers would only be reemployed after they had made written applications.* We believe that this places an unwarranted emphasis upon a phrase which can as reasonably be interpreted to mean that when the strike ends the employees whose jobs had not been permanently filled would be reinstated. That this is a more logical interpretation of the entire communication from Respondent, appears from the last sentence of the letter in which each striker is told that if his job has not been permanently filled he will be reemployed 'upon the the the same terms and conditions' of his former employment. The letter contains no threats of loss of seniority or of those fringe benefits such as insurance or hospitalization which are normally disrupted when a break in employment tenure occurs. Moreover, we note that the letter sent to the strikers in the Kerrigan case also speaks of permanent termination upon failure to return as an indication that the strikers do not desire 'reemployment'." [Emphasis supplied.]