**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**EUROPEAN CARS YPSILANTI, INC., Respondent.**

**No. 15175.**

United States Court of Appeals Sixth Circuit.

Nov. 20, 1963.

James McC. Harkless, National Labor Relations Board, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel Allison W. Brown, Jr., Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Charles Keller, Detroit, Mich. (Leonard A. Keller, Detroit, Mich., on the brief), for respondent.

Before MILLER, O'SULLIVAN, Circuit Judges, and PECK, District Judge.

PER CURIAM.

National Labor Relations Board has petitioned for enforcement of its order finding respondent guilty of violation of Section 8(a) (3) and (1) of the National Labor Relations Act. The Board, contrary to the findings of its trial examiner, held that respondent employer had illegally discharged some of its employees for engaging in a strike.

Respondent, European Cars Ypsilanti, Inc., is a corporation selling Volkswagen automobiles at Ypsilanti, Michigan. It employed nineteen mechanics. Shortly before the work stoppage involved, one of such employees, Wolfgang Wenzlawe, became active in efforts to organize respondent's employees into the Teamsters'

Union. While these activities were continuing, Wenzlawe was discharged by respondent. The day following Wenzlawe's discharge, and after their meeting with a Teamsters' Union business agent, thirteen employees went on strike in protest over Wenzlawe's discharge. On the evening of the day on which the strike commenced, May 10, 1961, respondent's president, one Payne, met with union officials in an unsuccessful attempt to settle the strike. He advised the union officials of the reason for Wenzlawe's discharge, viz.: repeated violations of company policy by purchasing parts from respondent's Parts Department and repairing customers' cars on his own in competition with respondent, and by attempting to purchase a used Volkswagen from a customer who was then dealing with respondent for the purchase of a new one. The trial examiner found that such misconduct had occurred and was the sole reason for Wenzlawe's discharge. The Board affirmed this finding.

On the day following the establishment of a picket line, Payne talked with the pickets. He explained to them that Wenzlawe's discharge was not because of his union activities, but for the reasons above outlined. He stated that he was not antiunion and tried to persuade the pickets to come back to work. He told the men that if they didn't return to work he would have to assume that they had voluntarily quit and that he would have to hire replacements. On the next day, Payne made a like address to the pickets. They continued the picketing. On May 13, Payne addressed the pickets again and caused to be delivered to each of them a letter in the following form:

May 13, 1961

"Enclosed you will find 2 checks, one for $———— and one for $————. The larger check, as noted, is your pay for the week of May 1st thru May 6, 1961. It was paid to you today (Sat., May 13, 1961) for last weeks work. The smaller check is for the two days you worked this week. Had you worked the full week of May 8th thru May 13th you would have been paid a full check next Saturday, May 20th.

"In as much as you did not report for work on Wednesday morning, May 10th, 1961 and have not reported for work since that date we are aware of the fact that you have voluntarily quit work at European Cars Ypsilanti, Inc. For this reason we are paying you the extra check one week early, this check paying you in full to date.

"The enclosed dollar bill (cash) will refund your parking money as of May 1st, 1961.

"Would you please make immediate arrangements to turn in your uniform to European Cars Ypsilanti, Inc., so that we may make proper settlement with the laundry company.

"Also please contact us as soon as possible on removing your tools and personal property from the dealership building.

Very truly yours,<br>European Cars Ypsilanti, Inc.<br>Thomas P. Payne, President"

Following delivery of such letters, Payne continued his efforts to persuade the striking employees to return to work. One of the strikers testified that Payne asked him to return to work at the time he handed him the letter. Payne's continuing requests were by direct talk at the shop, by telephone and by visiting the strikers at their homes. These requests were heeded at different times and all picketing ended on or about June 1st.

The complaint involved was initiated by an unfair labor charge filed by Wenzlawe, the employee discharged for proper cause. In addition to its assertion that Wenzlawe's discharge was a violation of the Act, the complaint charged respondent with numerous and sundry antiunion activities. The trial examiner absolved respondent of all of such charged misconduct. He found that the letter delivered to the strikers, considered in the light of its own language and in the light of all the surrounding circumstanc-

es, did not amount to a discharge of the picketing employees.

The Board adopted its trial examiner's findings, conclusions and recommendations in all respects, except that it determined that the letter of May 13th "caused a discharge of the strikers because of their support of the union, in violation of Section 8(a) (3)." The Board further stated, "However, even if the strike be considered only as a concerted activity in protest of Wenzlawe's discharge *and not in furtherance of a union objective,* the discharge of the strikers would still be a violation of Section 8(a) (1)." (Emphasis supplied.)

The Board ordered respondent to post a notice that it would cease and desist from conduct from which, except for the discharge of Wenzlawe, it had been absolved by the trial examiner and the Board's affirmance. The Board's order further states that "There is some indication in the record that the striking employees may have applied and been granted reinstatement." Instead of the record there being merely "some indication" that the strikers "may have" been reinstated, there is no evidence that any employee was refused reinstatement. On the contrary, respondent continuously sought their return to work. There was no evidence that any strikers were replaced. Yet the Board's order under the title of "The Remedy" says:

> "We shall order that the respondent make whole these employees for any loss of pay they have suffered, or may suffer, by reason of respondent's refusal to reinstate them upon their application."

It appears to be now conceded that no back pay award is or could be involved.

Returning to the Board's critical finding that the letter of May 13th accomplished a discharge of respondent's employees, we conclude that upon the record as a whole, such finding is not supported by substantial evidence. We must, therefore, deny its enforcement. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

In our opinion, the letter of May 13th, viewed in the context of the employer's conduct prior to and subsequent to its delivery, was not a discharge. Our position is consistent with our previous decisions in Ohio Associated Tel. Co. v. N. L.R.B., 192 F.2d 664, 667, 668 (C.A.6, 1951) and in Shopmen's Local Union No. 733, Intern. Ass'n. of Bridge, Structural & Ornamental Iron Workers, A. F. of L. v. N. L. R. B., 219 F.2d 874, 875 (C.A.6, 1955).

Enforcement of the Board's decree is denied.